# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

v. 24 CV 97214

VISA, INC.,

Defendant.

Conference

------------------------------x

New York, N.Y.
November 12, 2024
5:00 p.m.

Before:

HON. JOHN G. KOELTL,

District Judge

APPEARANCES

DEPARTMENT OF JUSTICE, ANTITRUST DIVISION
Attorneys for Plaintiff
BY: EDWARD WILLIAM DUFFY
BENNETT MATELSON
KEVIN KRAUTSCHEID
GREGG MALAWER

WILKINSON STEKLOFF, LLP
Attorneys for Defendant
BY: BETH A. WILKINSON
KIERAN GAVIN GOSTIN

The second course of conduct is about agreements that Visa has entered into with certain technology partners. These are -- an example would be they have an agreement with Apple whereby Visa has provided technology to Apple that allows Apple Pay to work, which is a way you can pay debit and credit with your phone. And as part of those agreements, they allege that we have -- and they're relying entirely on the written agreements here. They allege that we have essentially paid them off not to compete.

So we've entered into these agreements with them, and under the agreements, they're not allowed to compete in debit. However, if you actually look at the terms of the agreements which are incorporated by reference into the agreements, they don't do that. What they do is they say that if Apple decides to become a competitor, Visa no longer has to continue to deal with them and no longer has to provide their technology to them.

So under the terms of the agreements themselves, we don't think that's anticompetitive product, because there's lots of law that says that there's no duty to deal with competitors.

THE COURT: Okay. Mr. Duffy.

MR. DUFFY: Yes. If I can just have a few minutes to respond, you know, with our initial thoughts on the substantive bases of the motion, and then I did want to follow up with our

view of the benefits of having the pre-conference letter still submitted.

First, with respect to market definition, Mr. Gostin referenced ACH, which you know, as we've put forward in our complaint, it is our position that ACH is not in the same market as debit network services, and there are a few reasons for that. I think one of the more important is that ACH simply does not provide for a near instantaneous form of payment, and for that reason, it is not reasonably interchangeable with debit cards and cannot be used for many of the same types of processes.

Mr. Gostin also indicated that there are several criteria that we think are necessary for a product to be within the market. Fraud protections being one. And although we do say that the other smaller debit networks, called the PIN networks, don't have as robust fraud capabilities as Visa does, for a variety of reasons, they still do offer some type of fraud protections that do set them apart from a basic ACH product. And as your Honor mentioned, to the extent there are disputes about this, they are very much factual issues that we don't think would be suitable for a motion to dismiss, irrespective of the substance.

Going to the two types of conduct that Mr. Gostin was talking about. The volume based discounts, first, I think it's important for us to point out we're not alleging a predatory

pricing theory of harm under that theory. What the United States is alleging is that Visa has created incentive structures with their contracts with merchants and with banks that are tantamount to exclusive dealing because of the nature of the terms that are set forth.

So what Visa does is that there are certain transactions that a merchant is going to have no choice but to use Visa for routing that transaction. Visa is able to leverage those non-contestable transactions and create pricing structures that make it entirely uneconomical for merchants and their banks to consider alternative networks for those transactions that the networks could compete for. And, you know, we think the law is quite clear that that type of de facto exclusive dealing is a cognizable violation of the Sherman Act, both as monopolization and an unreasonable restraint on trade.

And then, finally, with respect to the tech partner contracts that Mr. Gostin was discussing, the key anticompetitive element of those agreements is not Visa refusing to deal. It is, instead, the nature of the threat of basically telling potential competitors if you do not compete with me, I will provide you with lucrative incentives, and if you do choose to complete with me, I am going to impose penalties upon you. So it is not a duty to deal situation as much as it is an incentive being offered to not compete with

Visa.

And then if I can briefly just address kind of the process issue of the three-page pre-motion letter. When agreeing to the briefing schedule, the United States was very interested in ensuring that we would have Visa's letter outlining the bases of its motion to help us, you know, kind of get a head start on the response to a motion to dismiss given the holiday schedule and so forth. It was kind of important for us to be able to get a better sense as to what their arguments would be. So we think we would benefit very much from having that letter on November 20 as Visa committed when proposing that schedule.

We also think, and the parties have submitted some letters dealing with the issue of discovery, and we think that the Court will eventually need to decide whether discovery can commence while a motion to dismiss is pending. And we do think that the three-page letter would help the Court in that determination when the issues is properly before the Court.

THE COURT: I must say I'm unpersuaded that the letters would do anything. You've heard from Visa the arguments that it intends to make. I'm sure you all can talk among yourselves. But as far as I'm concerned, it appears to be unnecessary paper.

I also don't think that that exchange of letters is going to sufficiently inform me of the merits or lack of merits