**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **UNITED STATES OF AMERICA,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**VISA INC.**<br><br>*Defendant.* |

**Case No. 1:24-CV-07214-JGK**

## [PROPOSED] ORDER GOVERNING ESI DISCOVERY

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the Parties must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the Parties are aware of the importance of cooperation and commit to cooperate in good faith to promote the "just, speedy, and inexpensive determination" of this Action, as required by Fed. R. Civ. P. 1. The Parties further commit to cooperate to ensure that this Action "shall proceed, as soon as may be, to the hearing and determination of the case," as is required by Section 4 of the Sherman Act in Government antitrust cases seeking

injunctive relief. 15 U.S.C.A. § 4. The Parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(l). The Parties' cooperation includes identifying appropriate scope for eDiscovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery and other parameters to guide preservation and eDiscovery issues;

NOW THEREFORE, it is hereby ORDERED:

## I.    GENERAL PROVISIONS

1.    Except as specifically set forth herein, this ESI Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Southern District of New York.

2.    The production specifications set forth in this ESI Order apply to Documents and ESI that are to be produced in the first instance in this Action.  This ESI Order does not apply to Previously Produced Documents and Materials.  No Party is obligated to reformat any such prior production in accordance with the production specifications in this ESI Order.

3.    If ESI discoverable in this proceeding was previously produced in *Pulse Network LLC v. Visa Inc.*, Case No. 4:14-cv-03391 (S.D. Tex.) ("the *Pulse* case"), or *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720 (E.D.N.Y.) including any cases since remanded following the completion of coordinated proceedings (all "MDL 1720"), the Producing Party may elect to produce that information according to the requirements for document and format and metadata set forth in the applicable ESI orders in those two cases, and shall be under no obligation to conform that prior production to the specifications contained in this ESI Order.  Aside from the requirements for document

format and metadata set forth in those other ESI orders, this ESI Order shall govern ESI discovery in the instant matter in all other respects. Discovery Material stamped or designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" (or comparable stamps), produced in the *Pulse* case or MDL 1720 bearing such stamp or designation and subsequently made available in this action, shall be treated as Confidential or Highly Confidential, respectively, for the purposes of the Stipulated Protective Order (Doc. No. 42) without re-reviewing the confidentiality designation of the previously produced documents. Discovery Material shall otherwise be stamped and designated in accordance with the Stipulated Protective Order and consistent with applicable law.

4.      This ESI Order does not define the scope of production, nor the relevance of any particular information.  No provision of this ESI Protocol waives any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

5.      The production specifications set forth in this ESI Order do not apply to databases, data sources, logs, and other structured data except as described in Section II.3 below.

6.      This ESI Order may be modified for good cause by a Stipulated Order of all Parties or by the Court. Parties reserve their rights to seek reasonable modifications of these procedures as appropriate.

7.      If disputes arise concerning the scope and nature of a production, the Parties must promptly meet and confer to reach agreement prior to seeking leave of the Court to resolve any disputed issues. If the Parties' disagreement persists after meeting and conferring in good faith, the Parties must notify the Court of their unresolved dispute(s) and seek resolution from the Court.

8.      The Parties agree to meet and confer to the extent new plaintiffs representing a United States state or commonwealth are added later to the Action and those states or commonwealths request reasonable modifications to these production specifications.

## II.    PRESERVATION

1.      **Materials to Be Preserved.** Each Party will take reasonable and proportionate steps to preserve discoverable Documents and ESI in compliance with its duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. The Parties agree to preserve ESI in such a way that it can be produced in a reasonably usable form in accordance with Fed. R. Civ. P. 34(b)(2)(E)(ii).

2.      **Reduction of Costs.** To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that each Party must preserve only non-duplicative potentially relevant ESI in its possession, custody, or control. Subject to and without waiving any protection described above, the Parties agree that:

    A.   The Parties will endeavor to agree upon a date limitation for the preservation of ESI; and

    B.   The Parties will endeavor to agree upon a list of the types of relevant ESI that should be preserved and the custodians for whom relevant ESI should be preserved. The Parties will add or remove custodians as reasonably necessary.

3.      **Evidence Preservation**.  The Parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken and to be taken to preserve evidence relevant to the issues reasonably evident in this case.  The Parties agree that the following categories of ESI need not be preserved, collected, or produced.

    A.   Documents or communications sent solely between outside counsel for Defendant

(or persons employed by or acting on behalf of such);

**B.** Documents or communications sent solely between counsel for the United States (or persons employed by or acting on behalf of the U.S. Department of Justice including the United States Attorney for the Southern District of New York);

**C.** Documents or communications in connection with this litigation sent solely within and among counsel for the attorney general office of any state or commonwealth that joins this Action (or persons employed by or acting on behalf of the such attorney general offices);

**D.** Documents or communications in connection with this litigation sent solely between counsel for the United States (or persons employed by or acting on behalf of the U.S. Department of Justice, including the United States Attorney for the Southern District of New York) and counsel for any State or Commonwealth Attorney General Office;

**E.** Documents or communications sent solely between outside counsel for Defendant and inside counsel for Defendant;

**F.** Documents or communications in connection with this litigation sent solely between counsel for the United States (or persons employed by or acting on behalf of such) and any person employed by any U.S. federal government agency;

**G.** Back-up and legacy IT systems and tapes used for disaster recovery;

**H.** Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

**I.** Logs of calls made from cellular phones;

**J.** Fragmented, slack, or unallocated data accessible only by forensics;

**K.** Data stored in random access memory ("RAM"), temporary files, or other ephemeral non-message data that are difficult to preserve without disabling the operating system;

**L.** Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates;

**M.** Systems no longer in use that cannot be accessed as of March 26, 2021, when the preservation obligation was triggered; and

**N.** Voicemail messages that are not contained in a Party's email system.

4. **No Preclusion.** Nothing in this ESI Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of Documents or ESI are not reasonably accessible.

5. **Preservation Does Not Affect Discoverability or Claims of Privilege**. By preserving Documents and ESI for the purpose of this Action, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## III. COLLECTION AND REVIEW

1. **Meet and Confer.** The Parties agree that in responding to any Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2. **Excluded from Collection, Review, and Production.** The Parties do not need to collect and review the excluded ESI listed in Section II.3. Any state or commonwealth that joins this Action does not need to produce duplicate materials already produced, or expected to be produced, by the United States.

3.      **TAR, Search Terms, or Other Methods.** The Parties will meet and confer in good faith regarding the use of technology-assisted review ("TAR") or a similar tool, or search terms and custodians to identify responsive documents. At the time that the Producing Party provides written Responses and Objections, a Producing Party must provide to the Requesting Party a detailed written description of the process proposed for fulfilling its document production obligations using TAR, search terms, or other similar tools. If the Parties agree to use search terms and custodians to identify responsive documents, the Parties shall meet and confer within 7 calendar days of service of Responses and Objections to each Request for Production to discuss custodians, search terms, and other proposed search parameters that will be used to generate hit reports.  After the Parties have agreed on the parameters for initial hit reports, the Producing Party must serve the hit reports (at the search-phrase and search-term level), and counter proposals for custodians and search terms (including hit reports at the search-phrase and search-term level) within 10 calendar days or as otherwise agreed by the Parties.  Hit reports for the identified search terms must be provided at the search-phrase and search-term level and de-duplicated across documents in other searches and within one document. After service of hit reports, the Parties will meet and confer within 7 calendar days to discuss potential revisions to the search parameters. If the Parties agree to generate revised hit reports, such reports shall be served within 7 calendar days or as otherwise agreed by the Parties. Requests for extensions of time to provide hit reports shall be considered in good faith and consent shall not be unreasonably withheld.

4.      **Disputes About Review Methodology.** The Parties must meet and confer in a good-faith effort to resolve by agreement any objections they may have over the Producing Party's process for fulfilling its document production obligations. If the Parties are unable to

resolve the objections by agreement, Plaintiffs collectively and Defendant may submit letters to the Court, or request a telephone conference with the Court, or otherwise seek relief from the Court.

5. **Responsiveness Review Permitted.** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by TAR or search terms are in fact responsive to the Requesting Party's request.

6. **Production of All Documents Captured.** Nothing in this Order may be construed or interpreted as requiring the production of all Documents captured by any search term or TAR if any such Documents are reasonably deemed not responsive to the Requesting Party's request or are otherwise privileged. The Parties shall not seek production of all documents containing search terms. The Producing Party may withhold non-responsive documents from production and shall not be required to produce non-responsive documents subject to clawing non-responsive documents back from production.

7. **Identification Process.** Each Party will use its best efforts to filter out all common system files, executable files, program files, application executable files, and any other non-user created data that exist in the National Software Reference Library ("NSRL") hash set list produced by the National Institute of Standards and Technology ("NIST"). The above-described filtering is commonly referred to as "deNISTing." If a Producing Party proposes filters other than those found in the NIST hash set list to collect for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party must advise the Requesting Party and the Requesting and Producing Parties must meet and confer regarding such additional proposed filters.

8.      **Email Threading.** Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No Document will be intentionally withheld from production solely on the basis that it is included in a produced more-inclusive email.

9.      **De-Duplication**. A Producing Party need produce only a single copy of a particular electronic document and may de-duplicate ESI at the family level by using industry standard MD5 or SHA-1 algorithms (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates. The Party must make a reasonable effort to identify all agreed upon Custodians who were in possession of any de-duplicated Documents and ESI, along with the file paths at which they were stored, through appropriate Load File fields, such as ALLCUSTODIANS and FILEPATH.

10.     **Use of Institutional Knowledge.** Each Party must use its institutional knowledge of how its ESI is stored and accessed in the ordinary course of business to identify responsive Documents. This institutional knowledge includes, but is not limited to, a Party's standard practices regarding the storage of ESI, its file organization structure, its usage of group ownership, group accounts, and shared network locations to manage or organize ESI.

## IV.     PRODUCTION OF ESI

The Parties must produce all Documents and ESI in the following format:

1.      **ESI.** ESI and paper Documents that are produced as scanned images should be produced in Standard Group IV Black and White single page TIFF images at a minimum of 300 DPI, 1 bit, with the exception of certain Documents identified in Section IV.2, below, which may be produced in native format. If after reviewing any black and white Document, a Receiving Party believes that color is critical to a document, the Parties must engage in

discussion regarding production of the specified documents in color, which production will not be unreasonably withheld. Hidden content (comments, draft markup, etc.) must be made visible prior to image conversion. The Parties must provide image load files in Concordance (\*.OPT) format to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata (including the fields described in Appendix A) should be provided in a Concordance \*.DAT format, or other standard, compatible file format and extension as the Receiving Party specifies. For Documents from which text cannot be extracted, such as non-native or non-searchable native files, the text will be generated using Optical Character Recognition ("OCR") and provided as multi-page text (.txt) files or other standard, compatible file format as specified by the Receiving Party.

      2.     **Native Format.**  Parties will produce the following agreed-upon ESI in native format: spreadsheets (e.g., Excel, Pages, OpenOffice,  etc.), presentations (e.g. PowerPoint, Keynote, etc.), and other files that cannot be converted to TIFF (such as audio and video files). Native files should contain the Bates number in the file title. For emails, native files may be produced in .MHT format, and should also be accompanied by TIFF images as outlined in Section IV.1. Presentation files should be produced as both natives and as Bates-numbered TIFF images. Native spreadsheet, audio, video, or other files should be accompanied by a TIFF image placeholder that contains "File Produced in Native," the beginning Bates number and confidentiality designation.  Wherever feasible, the Producing Party must include accompanying metadata in the load file. Documents with privileged information will not be produced in native format, unless the Party is able to redact privileged information in native format. Additionally, if after reviewing production of ESI in a non-native format, a Receiving Party believes that it is necessary to review a certain Document or Documents in native format, the Parties must engage

in discussion regarding production of discrete Documents in native form, which production will not be unreasonably withheld. With respect to emails (e.g., Outlook, Mail, etc.), the Producing Party must produce color versions upon reasonable request of the Receiving Party.

**3.** **Parent-Child Relationships**.  Except as to the materials listed in Section II.3 that need not be preserved or collected, Parent-child relationships (the association between an attachment and its parent Document) must be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

**4.** **Metadata Fields.**  All required metadata fields are identified in the attached Appendix A. All Documents should be produced with the required metadata fields—to the extent they are populated—with the exception of Documents produced from the files of outside counsel for Defendant, counsel for the United States, or counsel for the attorney general office of any state or commonwealth that joins this Action (or persons employed by or acting on behalf of such entities). For those Documents, the following metadata fields do not need to be produced: FOLDERLABEL and FILEPATH.

**5.** **Document Unitization.**  If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments must be maintained as it existed in the original when creating the image file. For Documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of Documents in a Document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) must be maintained through the scanning or conversion process.

6. **Redacted Documents.** Documents that contain redactions will be produced in single-page TIFF format with corresponding OCR text and a Concordance-delimited DAT file containing the metadata fields outlined in Appendix A to the extent that such metadata fields are not part of the redaction, with the exception that if a Party utilizes technology that permits the redaction of files that are not typically produced in image format (such as spreadsheets), those files may be produced in native format with redactions. Documents that are produced with redactions will be noted as "Redacted" in the DAT file and on the face of the redacted content. Documents with any metadata field redacted will be produced with a Redaction Status "Metadata Redacted" indicating the metadata for that document has been redacted in the DAT file.

7. **Production Media.** A Producing Party must produce responsive Documents in an encrypted electronic form via Secure File Transfer or on a DVD, USB thumb drive, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon ("Production Media"). The following information must be provided on the physical Production Media: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, where practicable, and shall also be provided in an accompanying letter.

8. **Embedded Objects.** Non-image files embedded within Documents, such as spreadsheets within a PowerPoint, must be extracted as separate Documents and treated like attachments to the Document in which they were embedded. If technically feasible, graphic objects embedded within Documents or emails, such as logos, signature blocks, and backgrounds should not be extracted as separate Documents. To the extent that embedded

images present recognition problems during processing, the Parties will meet and confer to discuss any proportional and appropriate countervailing measures.

9.      **Compressed Files.** Container file types (*e.g.*, *.CAB, *.GZ, *.TAR, *.Z, *.ZIP) must be decompressed in a manner that ensures any and all nested containers are also decompressed into the lowest uncompressed element, resulting in individual files. The container file(s) itself must not be produced.

10.      **Linked Files and Collaborative Work Environments.** A Producing Party must conduct an automated search of Documents to be produced to identify in those Documents links to additional Documents in any Collaborative Work Environment maintained by the Party (such as OneDrive, SharePoint). For any such Documents ("Linked Parents"), to the extent reasonably feasible and capable of being done automatically, the producing party shall use its best efforts using available technical solutions to produce the document corresponding with each identified link ("Linked Attachments"), listing the metadata described in the Other ESI column of Appendix A. For each Linked Parent, to the extent reasonably feasible and capable of being done automatically, the Producing Party shall use its best efforts to populate the LINKEDATTACHIDS field with the document control numbers of every record the Linked Parent references; for each Linked Attachment, to the extent reasonably feasible and capable of being done automatically, the Producing Party shall use its best efforts to populate the LINKEDPARENTIDS field with the document control numbers of every record that links to the Linked Attachment. In the event the Linked Parent or Linked Attachment were part of a prior production, the Producing Party will provide an overlay file populating these two fields as needed. For Collaborative Work Environments offering version control, the Producing Party will use automated collection methods to

produce the version of the Linked Attachment with a DATESAVED value. For documents where Linked Attachments and metadata were not produced, a Receiving party may request that the Producing party search for and produce specific Linked Attachments with appropriate metadata, which the Receiving party will do to the extent the Linked Attachments still exist and can be retrieved from the identified link. The Producing Party will produce such specific Linked Attachments within 30 calendar days of receipt of the request from the Receiving Party. Requests for extensions of time shall be considered in good faith and consent shall not be unreasonably withheld

     **11.**    **Text and Chat Messages.** The Parties must use reasonable, good faith, and proportional efforts to preserve relevant text and chat messages. When producing text and chat messages (*e.g.*, messages sent via SMS, Teams, Slack, WhatsApp, Signal, Apple Messages, and other short messaging platforms), those messages must be unitized on the conversation/channel level into 24-hour calendar-day chunks, or conversation days, with each conversation day including all messages in that conversation or channel on a given calendar day. Each conversation day must be reviewed and produced as a single record, with redactions for privilege as provided in Section V below. The records must be produced with the metadata specified in the "IM/Text/Chat" column in Appendix A, including TXT-THREAD-GROUP (the DOCID of the first conversation day in a given discussion/channel) and TXT-PARTICIPANTS (a list of participant names). The Producing Party will use best available automated solutions to assign full names to participants who are identified only by phone number, email address, handle, or other identifier.

     **12.**    **Ephemeral Messages.** The Parties are obligated to use reasonable, good faith, and proportional efforts to preserve ephemeral and encrypted messages (*e.g.*, messages

sent via Snapchat, Signal, or WhatsApp).

**13.    Voice messages.** The Parties must use reasonable, good faith, and proportional efforts to preserve relevant voice messages that are contained in a Party's email system. These records should be produced in WAV or MP3 format and adhere to the specifications of Section IV.2 regarding Native Format, along with the metadata fields described in the Other ESI column of Appendix A. In the event a Party is unable to collect and produce the voice messages as native audio files, the Party shall produce a manual transcription of each relevant voice message.

**14.    Passwords and Encryption.** To the extent practicable, the Parties must provide all Documents and ESI such that the Receiving Party is not blocked by any passwords or encryptions on those Documents and ESI.

## V.    PRIVILEGE LOGS

**1.    Privilege Log Production.** Any Producing Party will produce a privilege log within 60 calendar days after substantially completing production in response to a set of requests for production. For any Document withheld or redacted, the Producing Party will produce privilege logs in MS Excel (.xlsx) format that are searchable and sortable. For each document (including each document in a document family consisting of multiple documents) on which a privilege is claimed, the privilege log must provide sufficient information to enable the Parties to assess the applicability of the privilege claimed.  A Party or Non-Party seeking to withhold or redact a document under the attorney-client privilege, deliberative process privilege, work product protection, or any other privilege or protection must, at a minimum, provide the essential elements necessary to sustain a claim of privilege, including, for fully privileged documents only, a description of the document's subject matter with

sufficient detail to enable the Parties to assess the privilege claim and the facts relied upon to support the claim. The Receiving Party may make requests on a document-by-document basis for a subject matter description of a document redacted for privilege, but not fully withheld. The Producing Party will provide such subject matter descriptions within 30 calendar days of receipt of such request.

      **2.**      For documents previously produced in MDL 1720, privilege logs shall be accepted "as is" in accordance with agreements reached in MDL 1720 with respect to the format of the log and the information that must be on the log. Appendix B to this ESI Order identifies the types of information that will be included in such logs. Such privilege logs from MDL 1720 must be updated to reflect the results of any subsequent litigation or negotiations over documents improperly withheld or redacted as privileged. In all other respects aside from the format of the log and the information that must be on the log, this ESI Order will govern the preparation of privilege logs in the instant matter. If the parties in MDL 1720 agreed to waive the log requirement for redacted documents, the Producing Party is required in this litigation only to provide an index identifying reproduced documents that were redacted for privilege and include only those fields set forth below that can be fully or partially populated through an automated process.[1] The Parties shall not be required to re-review documents previously withheld as privileged from productions in MDL 1720. To the extent only a portion of a prior production from MDL 1720 is produced in this litigation (e.g., search terms are used to identify documents responsive in this litigation), the same search procedure used

---

[1]   For documents redacted for privilege and produced in MDL 1720, Defendant must, upon reasonable request from Plaintiff on a document-by-document basis, provide the basis for the redactions. Defendant will provide such basis within 30 calendar days of receipt of the written request from Plaintiff.

to identify responsive documents from the prior production shall be applied to the universe of documents withheld as privileged and existing log entries for those documents shall be re-produced "as is" in this litigation. Privilege logs for the prior productions shall be produced 45 calendar days after (i) the completion of the re-production of documents from MDL 1720, or (ii) the date this ESI Stipulation is entered, whichever is later.

3.    **Placeholder Slipsheets.** If any member of a produced Document family is withheld on grounds of privilege or work-product, the Producing Party will produce a Bates stamped placeholder slipsheet that identifies the Document as withheld as privileged and will identify the Document in the Privilege Log by the Bates number on the placeholder slipsheet. If the withheld Document is part of a responsive Document family, the Parties will insert a placeholder to indicate that the Document has been withheld from that family and will produce all non-privileged Documents in the family.

4.    **Privilege Log Contents.** Privilege logs must contain the following information, to the extent reasonably available:

    **A.**  BegBates and EndBates and (in the case of fully redacted documents, DOCID);

    **B.**  Parent BegBates and Family Range

    **C.**  Where applicable, LinkedAttachID, or LinkedParentID;

    **D.**  The Custodian or Custodial or Non-Custodial Data Source from which the Document was collected;

    **E.**  The name of each person who sent, authored, or otherwise prepared the Document;

    **F.**  The name of each person designated as an addressee or copyee, including CC and BCC (copyees and blind copyees shall appear in separate fields);

**G.** The date created;

**H.** The number of pages;

**I.** The title of the Document or email subject line or Document file name, according to Document metadata;

**J.** For fully privileged documents, a description, pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii), of the contents of the withheld Document that is sufficient to enable other Parties to understand the general subject matter of the Document and assess the basis of the claim of privilege or other protection from disclosure;

**K.** The name of the attorney(s) and legal organization who provided the legal advice at issue, from whom the legal advice at issue is requested, who directed the facilitation of the legal advice at issue, and/or who requested or prepared the Document;[2] and

**L.** The privilege or protection asserted (e.g., attorney-client privilege, work product doctrine).

**5.** **Deficient Privilege Logs.** Privilege logs that provide only boilerplate assertions, lack essential information specified above, or indicate that the withheld material concerns business matters rather than legal advice are deficient.

**6.** **Accompanying Legends.** Each privilege log must include a separate legend containing an alphabetical list (by last name) of each person or person's email included on the

---

[2]    In a circumstance where the name of the attorney or legal organization is not reasonably identifiable, but it is nonetheless apparent that an attorney or legal organization was providing legal advice or receiving a request for legal advice, the privilege log must provide sufficient information to support the assertion that an attorney or legal organization was involved in the communication.

privilege log, along with the person's title, and the person's company affiliation. The legend must include all variations of each person's name or email address referenced in the privilege log. Attorneys who acted in a legal capacity must be marked with the designation ESQ after their last name (include a space before and after "ESQ"). Each privilege log must include a separate legend containing, for each email listserv or group, the names of all members of that email listserv or group that can be identified using commercially reasonable efforts. The legend(s) must include columns for last name, first name, and ESQ. For each entry of the privilege log, all attorneys acting in a legal capacity with respect to that particular document or communication will be marked with the designation ESQ after their names. Upon request of the Receiving Party, the Producing Party will, within 30 calendar days of such request, identify the "commercially reasonable efforts" that it undertook to identify the listserv or group members. By agreeing to provide this information, the Producing Party is not waiving any applicable work product or privilege protections.

7.     **Categorical Privilege Designations.** If a Producing Party contends that all Documents of a particular type or category are privileged, or requiring the creation of an individualized privilege log is not reasonable or proportionate for documents of a particular type or category, they will meet and confer with the Receiving Party on identifying such Documents on a privilege log by category rather than individually. The Receiving Party will consider any such request in good faith. The Producing Party's categorical privilege log entry must still provide the Requesting Party, and the Court if necessary, with information sufficient to evaluate the Producing Party's privilege claims. The Parties need not include in any privilege log the ESI listed in Section II.3.

8.     **Single Entries.** A single Document containing multiple email messages in the body of the document (i.e., in an email chain) may be logged as a single entry.

9.     **Assert All Bases.** If the Producing Party contends that more than one basis for withholding applies to a single document, all bases must be asserted in the privilege log.

10.     **Redactions.** A Party or Nonparty asserting a privilege claim must redact only those portions of the document that are protected by the privilege. If a document contains both privileged and non-privileged communications, the nonprivileged communications must be produced. In no event, will a Party withhold an entire email on the basis of privilege if either (1) the content of the email also contains non-privileged information or (2) the email is a parent email with a substantive (e.g., not a signature image or graphic file), non-privileged attachment; a Party claiming privilege over such an email shall produce the email with any privileged communication redacted and with non-privileged communication unredacted, which will include the sender, recipient, date, and time of the email.  In the circumstance of a privileged parent email with a substantive, non-privileged attachment, the last-in-time email will be produced with non-privileged header information unredacted and privileged content redacted and any lesser-included privileged emails may be redacted in full such that both header and content information is redacted.[3] The redactions to partially privileged documents will be narrowly applied so the Receiving Party has the ability to discern to the maximum extent practicable the privilege assertion within the document and to view all non-privileged communications and material. Redactions based on relevance, responsiveness, or

---

[3]    The Receiving Party may make reasonable requests on a document-by-document basis for production of email threads with non-privileged header information visible for lesser-included emails (i.e., "lesser redactions"). The Producing Party will provide such lesser-redacted versions within 14 calendar days of receipt of such request.

confidentiality are disallowed.  Non-responsive attachments may be withheld if they are non-responsive agreements subject to third party notice provisions.  The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

11. **Privilege Logs from Previously Produced Documents and Materials**. Defendant need not, pursuant to this ESI Order, update privilege logs provided to Plaintiff as part of its Previously Produced Documents and Materials. However, Plaintiff reserves the right to challenge the adequacy of the privilege logs associated with its Previously Produced Documents and Materials. Such challenges will be governed by the requirements for the privilege log set forth in the corresponding Civil Investigative Demand, as modified by any subsequent agreements between Plaintiff and Defendant.

12. **Privilege Disputes.** The Parties will comply with L. Civ. R. 37.2 if there is a dispute over a Party's claim of privilege or privilege log requiring the Court's intervention.  The Parties will confer and make a good faith effort to resolve any such dispute before seeking Court intervention.  Documents determined by the Court not to be privileged will be marked with "-d" (for deprivileged) after the Bates number on each page of the documents.  Upon production of deprivileged documents, the Producing Party will produce an index mapping the Bates number of each deprivileged document to the control number used to identify that document on the privilege log.

13. **Re-Producing Documents.** Except as provided in Paragraph V.10, if a Document is produced with redactions, the redactions must not obscure any header information (*e.g.*, from, to, subject, sent date) of any emails or other communications reflected in the Document, except to the extent that information is privileged. With the exception of documents produced in MDL 1720 as discussed in paragraph V.2 above, a Party who,

pursuant to a request under Fed. R. Civ. P. 34 or a nonparty, pursuant to a request under Fed. R. Civ. P. 45, re-produces Documents from other matters, is required to re-review and re-log any Document that was withheld from the other matters on grounds of privilege in the format that is specified in Section V of this document. The Parties will, however, consider reasonable requests by a Producing Party to re-use privilege logs prepared in other matters beyond MDL 1720 on a log-by-log basis.

**14.**     Paragraphs 53 through 55 of the Protective Order (ECF # 42) governing Inadvertently Disclosed Information, dated December 17, 2024, constitutes an order for purposes of Federal Rule of Evidence 502(d).

## VI.     DATABASES, DATA SOURCES, LOGS, AND STRUCTURED DATA

The Parties must meet and confer regarding the production format and scope of data contained in databases, data sources, and logs to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party. To avoid doubt, information will be considered reasonably usable when produced in CSV format or other commonly used electronic formats, including other character-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties must meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting Party to view or access the ESI.

## VII.   PAPER DOCUMENTS

A Producing Party must scan and OCR paper Documents. The following information must be produced in the load file accompanying production of paper Documents produced by scan and

OCR to the extent reasonably practicable: (a) DOCID (b) ENDDOC, (c) CUSTODIAN, (d) EPROPERTIES, (f) BEGATTACH, and (g) ENDATTACH. Paper Documents should be logically unitized for production to the extent reasonably practicable as outlined in Section IV.5. Generally, when scanning paper Documents for production, distinct Documents should not be merged into a single record and single Documents should not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly. Where a Document or a Document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label must be scanned and produced as the first page of the Document or grouping to the extent reasonably practicable.

## VIII.   DEFINED TERMS

For purposes of this ESI Order, the Definitions below shall apply.

**1.**      "Action" means the action filed in this Court under the caption *United States, et al. v. Visa Inc.*, 1:24-cv-07214-JGK, as well as any additional actions subsequently consolidated with this Action, including any consolidated discovery, pretrial, trial, post-trial, or appellate proceedings. For the avoidance of doubt, "Action" excludes pre-Complaint investigations by Plaintiffs.

**2.**       "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a), including but not limited to emails, calendar items, Instant Messages, Text Messages, Chat Messages, and Other ESI.

**3.**      "DeNIST" means the act of filtering and removing system files, executable files, application files, program files, and other non-user created data from ESI that has been collected.

**4.**       "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, hard copy discovery, and tangible things.

**5.**     "Format" means the internal structure of a file, which defines the way it is stored and used.

**6.**     "Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, for example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.msg, *.pst, and *.pdf files).

**7.**     "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual Custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

**8.**     "Previously Produced Documents and Materials" means documents and materials provided to the U.S. Department of Justice pursuant to Civil Investigative Demand Nos. 30608 (including documents originally produced to the Federal Trade Commission in FTC File No. 2010011), 30714, 31331, 31551, 31686, 31687, 31688, 31689, 31764, 31765, and 31766; and pursuant to DOJ File No. 60-522190-0006.

**9.**     "Producing Party" means a Party that produces documents.

**10.**     "Receiving Party" means a Party to whom documents are produced.

**11.**     "Responsive Document" means any document that the Producing Party has agreed to produce or log, or that the Producing Party has been ordered to produce by the Court.

**12.**     "Bates Number" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of:

> **A.**     An alphanumeric portion identifying the Producing party and/or other
>
> characteristics of the production; and

**B.**     A numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than 16 characters in length.

13.     "Metadata" means non-privileged information (i) embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

14.     "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

15.     "Linked Parent" means a document that includes a link to a document that is stored in a Collaborative Work Environment or other location. The LINKEDPARENTIDS field in Appendix A will typically only be populated for documents within a Collaborative Work Environment that are linked to email or chat messages and will be populated with the unique identifiers of those email or chat messages.

16.     "Linked Attachment" means a document in a Collaborative Work Environment or other location that is mentioned in a Linked Parent but is not embedded in the Linked Parent. The LINKEDATTACHMENTIDS in Appendix A field will typically only be populated for email or chat messages that link to a document within a Collaborative Work Environment and

25

will be populated with the unique identifiers of those documents within the Collaborative Work Environment.

17.    "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded-data, as well as OCR or Extracted Text.

18.    "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

19.    "Extracted Text" means the text extracted from a Native File and includes all header, footer, document body information, and tracked changes content (comments, markup, etc.).

## IX.    MISCELLANEOUS

1.    **Costs of Production.**  Unless this Court order otherwise for good cause shown, each Party and nonparty will bear the costs of collecting, processing, reviewing, and producing its own documents.

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

By:    */s/ Aaron M. Teitelbaum*

Aaron M. Teitelbaum
Bennett J. Matelson
Michele Trichler
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 4000
Telephone: (202) 894-4266
Facsimile: (202) 514-7308
Aaron.Teitelbaum@usdoj.gov
Bennett.Matelson@usdoj.gov
Michele.Trichler@usdoj.gov

*Attorneys for Plaintiff United States of America*

**FOR DEFENDANT VISA INC.:**

By:    */s/ Kieran Gostin*

Kieran Gostin (SBN NY 4847653)
Beth Wilkinson (SBN NY 2181592)
Brian Stekloff (admitted *pro hac vice*)
Roxana Guidero (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
kgostin@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rguidero@wilkinsonstekloff.com

Anne P. Davis (*admitted pro hac vice*)
Jonathan Ian Gleklen (*admitted pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-6197
Facsimile: (202) 942-5999
anne.davis@arnoldporter.com
jonathan.gleklen@arnoldporter.com

**IT IS SO ORDERED.**

Dated: _____, 20__                    _____