UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

　　　　　　　　　　　*Plaintiff,*

　　　　v.

VISA INC.,

　　　　　　　　　　　*Defendant.*

Case No. 1:24-cv-07214-JGK-SLC

## STATUS REPORT

Pursuant to the Joint Status Report (ECF No. 126), the parties provide the following status report on their negotiations regarding the data to be produced by Visa in discovery and appropriate deadlines for production. The parties previously provided joint status reports on the data negotiations on August 13, 2025 (ECF No. 105), September 9, 2025 (ECF No. 112), September 26, 2025 (ECF No. 114), January 16, 2026 (ECF No. 120), and February 11, 2026 (ECF No. 126).

In prior status reports, the parties reported to the Court that they had concluded their discussions and come to agreement as to the scope and timing of productions related to Visa's debit network data underlying Visa's Global Business Intelligence ("GBI") tool (ECF No. 120), after Visa produced sample reports of all six categories of data relating to the GBI tool (ECF No. 114).  As a result, the Joint Amended Scheduling and Case Management Order of January 23, 2026, established a schedule by which Visa was ordered to produce data. (ECF No. 123 ¶ 8).

**United States' Position**

On March 10, 2026, Visa informed the United States that it would be unable to meet the Court-ordered March 27, 2026 deadline to produce the remaining agreed-upon Clearing & Settlement data, due to Visa's inability to validate its October 2021–August 2025 Clearing & Settlement data. This failure to meet this Court-ordered deadline is despite Visa successfully (the parties thought) provided (in August 2025) the United States with a more extensive sample report from October 2021 as well as one streamlined final report (in January 2026) for Clearing & Settlement without validation issues. At 3PM on the day this status report was due, Visa informed the United States for the first time that one of these reports was also affected by the issue but did not identify which report or the extent of the impact.

As the Court is aware, the United States sought data important to its case early in discovery. (*See, e.g.*, ECF Nos. 35, 53, 105). While the requested data is voluminous, the United States is not asking Visa to manipulate or interpret it; rather the request is simply that Visa deliver to the United States certain data that Visa already maintains. For over a year the United States worked intensively with Visa to negotiate data production, review samples, and finalize the scope, but it has yet to receive almost any of the GBI data that Visa has agreed to produce.

Visa's GBI interface tool allows employees to access metrics of key Visa business and product performance indicators, including those related to debit transactions. The United States has requested underlying data from four reports that Visa generates from the GBI database in its ordinary course of business, as outlined in a GBI specific User Guide that Visa wrote in the ordinary course of business. The United States has requested data from a subset of the fields that can be used to build the GBI reports in order for the United States to run its own analysis. This data includes information relevant to the United States' claims, including market shares, market

power, network effects, foreclosure, non-contestability of Visa debit transactions, fraud rates, supracompetitive pricing, and anticompetitive effects on existing and nascent competitors. The United States is not requesting that Visa collect, create, or calculate data it does not already maintain.

The United States heavily negotiated with Visa for months to narrow its data requests within the limits that Visa specified and said it could execute. During that time, the United States requested on multiple occasions that the parties include their technical personnel on our meet and confers to discuss issues related to data. Visa has finally consented to such a call. While we believe that earlier calls may have helped obviate some of the problems Visa has encountered with its data production, we are hopeful that this will help the parties resolve the data issues. Depending on what the United States learns, the United States may seek relief from the Court, including by requesting that the Court order Visa to sit for a narrow 30(b)(6) deposition on this topic.

Although the United States is working with Visa to explore potential solutions to Visa's data production issues, the United States is extremely concerned that Visa will not meet its upcoming agreed-upon and Court-ordered data production deadline of March 27, 2026. These concerns compound because Visa acknowledges it may encounter similar validation issues in producing the agreed-upon data for the remaining Fraud, Authorization, and Active Cards reports by the Court-ordered deadline of May 29, 2026.

One of the United States' concerns is fundamental: It is unclear what the validation issue is or why it has purportedly just arisen. Although Visa provided high-level answers addressing some of the United States' initial questions regarding the problem, a more fulsome and technical explanation is needed. Nearly six months ago, Visa provided the United States with a sample

report containing the United States' finalized Clearing & Settlement requests. The United States subsequently narrowed its requests and, in December 2025, reached agreement with Visa on their scope. More than two months ago, in January 2026, Visa produced the more streamlined and validated report to the United States without issue. In light of these prior agreements and productions, the United States is understandably confused as to the problem and, as of the date of the status report, Visa has failed to adequately explain what happened.

Another concern relates to Visa's previous faulty data productions. In fall 2025, Visa failed to produce agreed-upon data relating to transactions initiated on Mastercard-branded cards but routed over Visa's Interlink network ("Mastercard/Interlink transaction data") when it supplied the United States with sample October 2021 GBI reports. When informed of the issue, Visa stated that its failure to produce the data was due to a filter application which would be resolved on final data pulls. The issue was not resolved. Instead, when Visa produced its Clearing & Settlement, Authorization, and Fraud data nearly four months later, Visa again failed to include the Mastercard/Interlink transaction data. The United States promptly alerted Visa to its omission and proposed an alternative production timeline to remediate. In response, Visa informed the United States that it could not commit to the proposed solution because of the separate, newly discovered validation issue. Thus, the United States still lacks the agreed-upon Mastercard/Interlink transaction data it is owed.

Despite its numerous production problems, Visa offers inadequate solutions. Its proposed solution to the validation issue (and by extension, its solution to the Mastercard/Interlink transaction issue) is to rely on contracted data analysts, rather than Visa employees, to pull the data. Visa estimates the data analysts could pull and produce only the Clearing & Settlement data in about two months—with the data lacking over a dozen agreed-upon data fields. Based on what

the United States knows as this time, the Visa's newly proposed narrower report *does not* contain of the information the United States needs for its claims and defenses. In addition to these data analysts lacking access both to certain agreed-upon and necessary Clearing & Settlement data fields, they also lack access to *all* of the Fraud, Authorization, and Active Cards reports.

In other words, Visa's proposed solution would delay the United States' receipt of the Clearing & Settlement data by at least one and a half months; would not include all of the agreed-upon data fields; and would not address potential validation issues for the upcoming Fraud, Authorization, and Active Cards data productions.

Given that Visa has not sufficiently explained the cause of the validation issue, it is unclear what the impact to validation will be if contracted data analysts, rather than Visa employees, pull the data. Visa explained, at a high-level, that the database Visa employees pulled from does not capture all the necessary data for validation but believes that the dataset the data analysts will pull from will contain the necessary information. With this limited information, the United States lacks confidence that the data analysts will not run into the same—or even more extensive—validation issues as do Visa employees. It is also unclear whether or why there is a need to drop from production any of the heavily negotiated and agreed-upon data fields if Visa's data analysts can simply obtain necessary access to all data fields.

Over the past week, in light of Visa's significant production issues, the United States renewed its proposal for the parties' respective technical subject matter experts to directly discuss the problems and potential solutions. Because Visa has not yet sufficiently answered the fundamental questions of what happened and why, and what possible alternative solutions exist or when they could be implemented, the United States believes this is the most efficient path

forward. The United States is encouraged that Visa has agreed to such a call next week and to make the appropriate technical personnel available to the United States.

If Visa refuses to facilitate reasonable solutions to its data-production issues, however, the United States may request that the Court exercise its authority and either order that Visa include knowledgeable technical personnel in further meet-and-confer communications with the United States or order a limited 30(b)(6) deposition of Visa solely for purposes of ensuring an adequate resolution to Visa's data validation and production issues. Because the 30(b)(6) would be narrow and focused on resolving Visa's production problems rather than substantive case matters, the United States would request such deposition not count against the United States' allocated deposition hours or any other deposition limitation—30(b)(6) or otherwise—laid out in prior Court orders. (*E.g.*, ECF No. 133).

To further this goal of remediating Visa's data production deficiencies expeditiously, the parties will continue to negotiate and intend to update the Court by March 20, 2026. If necessary, one or both parties will seek relief from the Court.

**Visa's Position**

Visa has worked diligently to collect and produce an extraordinary volume of historical transactional data in response to the government's broad data requests. For example, Visa produced multiple large data sets, without issue, on September 29, 2025, November 21, 2025, and February 24, 2026. As Visa was recently preparing to make another production of a large bespoke dataset later this month, we encountered a problem, discussed in more detail below, that unfortunately prevents our ability to meet the disclosure schedule agreed to by the parties and adopted by the Court. Visa promptly identified the cause of the problem, notified the government, and proposed a path forward that would allow Visa to dual-track the remaining data

to be produced, preserving as much of the parties' original schedule as possible. Proceeding with this solution would require a small subset of the fields to be excluded from the production which Visa hopes will be sufficient to the government but is willing to discuss further. At this time, Visa awaits the government's response, and there is no present dispute for the Court to resolve.

By way of background, the complexity of the data collection Visa is currently undertaking is a result of the government's requests for bespoke data queries from Visa's backend data systems. The government would not agree to permit Visa to produce transactional data reports kept by Visa in the ordinary course of business and instead insisted that Visa run data queries created solely for the purposes of this litigation. Despite the great burden and expense of running these queries, Visa agreed to do so. But to pull these data, Visa's personnel have had to write customized, new computer code that maps hundreds of requested fields in numerous data tables. The task has been complicated by the fact that Visa's data systems and architecture are not set up to provide historically preserved snapshots in time and instead are designed for forward-looking client-service needs.

Visa has been transparent from the outset that the complexity involved in these data extractions could result in unforeseen complications and obstacles. Visa ultimately agreed to invest significant time and resources to create the bespoke data queries requested by the government, on the condition that Visa be given sufficient time to complete this work and that the parties agree to work together cooperatively to address any issues that may arise.

With this understanding, Visa constructed the queries necessary to extract monthly clearing and settlement data reports and provided multiple samples to the government. The parties then agreed that Visa would produce the final clearing and settlement data, covering a four-year period, by March 27, 2026. Visa promptly initiated these data pulls. Visa had

predicted this work would take more than two months, including hundreds of hours for high-powered business servers to simply process the code necessary to collect the relevant data. Visa was on track to complete these productions ahead of schedule when it recently discovered a problem during the validation process. As Visa has explained to the government, the problem arose from a mismatch between the collection of historical data from a live relational database where certain tables within the source system included only current values and not historical records. As a result, some historical data were not available and were not included in the monthly reports collected. Visa now understands that this issue affected at least one of Visa's prior samples, which neither Visa nor the government's reviewing economists appreciated at the time.

Visa can mitigate this issue by sourcing much of the missing data from a system maintained by external data consultants that includes static monthly snapshots of the requested data. However, Visa's data consultants do not have access to all of the fields initially requested by DOJ. As explained above, Visa hopes that these fields will be sufficient but will confer with the government further on this issue. Visa has also agreed to make its data consultant available to answer the government's questions about the collection issue that arose and our proposed solution.

We are hopeful that we can work collaboratively with the government to resolve these issues promptly. In any event, Visa is taking the learnings from this experience and is working to mitigate this issue to the extent it could implicate its data pulls for other transactional datasets.

Dated: March 13, 2026

Respectfully submitted,

By:    /s/ Michele Trichler
Michele Trichler
Craig Conrath
Erin Murdock-Park
Bennett J. Matelson
Lauren Riker
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 4000
Telephone: (202) 394-5211
Facsimile: (202) 514-7308
Michele.Trichler@usdoj.gov
Craig.Conrath@usdoj.gov
Erin.Murdock-Park@usdoj.gov
Bennett.Matelson@usdoj.gov
Lauren.Riker@usdoj.gov

*Counsel for Plaintiff, the United States*

By:    /s/ Margaret A. Rogers
Margaret A. Rogers
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 836-7830
margaret.rogers@arnoldporter.com

Anne P. Davis (*admitted pro hac vice*)
Jonathan Ian Gleklen (*admitted pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-6197
Facsimile: (202) 942-5999
anne.davis@arnoldporter.com
jonathan.gleklen@arnoldporter.com

Beth Wilkinson (SBN NY 2181592)
Brian Stekloff (admitted *pro hac vice*)
Kieran Gostin (SBN NY 4847653)
Roxana Guidero (admitted *pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@ wilkinsonstekloff.com
kgostin@ wilkinsonstekloff.com
rguidero@ wilkinsonstekloff.com

Jeremy Barber (SBN NY 5344304)
Anthony P. Ferrara (SBN NY 5656905)
WILKINSON STEKLOFF LLP
130 W 42nd Street, Floor 24
New York, NY 10036
Telephone: (212) 294-8910
jbarber@wilkinsonstekloff.com
aferrara@wilkinsonstekloff.com

*Counsel for Defendant Visa, Inc.*