Q42DUNIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           Plaintiff,

       v.                                24 CV 07214

VISA, INC.,

          Defendant.
                            Conference
------------------------------x
                            New York, N.Y.
                            April 2, 2026
                            11:30 a.m.

Before:

                HON. JOHN G. KOELTL,

                         District Judge

                  APPEARANCES

DEPARTMENT OF JUSTICE
     Attorneys for Plaintiff
BY:  CRAIG CONRATH
     ERIN MURDOCK-PARK

ARNOLD & PORTER KAYE SCHOLER, LLP
     Attorney for Defendant
BY:  ROBERT J. KATERBERG
     RAINA DUGGIRALA

WILKINSON STEKLOFF, LLP
     Attorney for Defendant
BY:  JEREMY SCOTT BARBER

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q42DUNIC

(Case called)

THE DEPUTY CLERK:  All parties please state who they are for the record.

MR. CONRATH:  Good morning, your Honor.  Craig Conrath for the United States.  My colleague, Ms. Murdock-Park, will be speaking for us today.

MS. MURDOCK-PARK:  Good afternoon, your Honor.

MR. KATERBERG:  Good morning, your Honor.  Robert Katerberg for defendant Visa.

MS. DUGGIRALA:  Good morning, your Honor.  Raina Duggirala, also on behalf of Visa.

MR. BARBER:  And Jeremy Barber on behalf of Visa as well, your Honor.  Good morning.

THE COURT:  Good morning.

I called you in for a personal conference today.  There's a discovery dispute that I wanted to resolve, and, also, just to talk to you about what the status of the litigation was.  I thought that that would be better done in person.  So thank you for traveling.  It's good to see you all.

First, there is the discovery dispute about whether the government would be required to produce documents from the Treasury under Rule 34 rather than have Visa seek a subpoena.  I realize that the letters before me are letters to advise about a discovery dispute, but I'm prepared, based on the papers, to resolve it.  If the parties want to brief it further

Q42DUNIC

with any available motion, the parties can, but I wanted to give you my views on the motion.

Do the parties want to say anything else that they haven't already told me in their papers?  No?

MS. MURDOCK-PARK:  Not for the United States, your Honor.

MR. KATERBERG:  Your Honor, for Visa, as the movant, I'm happy to address any questions your Honor may have, but I do think the papers tee up the issue well.

THE COURT:  Great.

The defendant, Visa, Inc., seeks production pursuant to Federal Rule of Civil Procedure 34 of certain documents from the government relating to "Pay.gov," a payment platform maintained by the United States Department of Treasury. Pay.gov enables individuals to make online payments to the government using a variety of payment methods, including debit. Visa contends that "The United States decision to accept debit preference with respect to debit routing and acceptance of other payment substitutes is directly relevant to many issues in this case, including market definition and debit competition issues."  Visa Premotion Letter One, ECF No. 136.

The government contends that Visa must subpoena the documents from the Treasury Department under Rule 45 and comply with the Department's *Touhy* requirements and regulations. Thus, the key question is whether the Treasury Department is a

Q42DUNIC

"party" to this action subject to discovery under Rule 34. Rule 34 requires a "party" may serve on any other "party" a request within the scope of Rule 26(b)(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding "party's" possession, custody, or control.

As Visa points out, *United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978) is instructive. *AT&T* was, similarly, a civil enforcement action under the antitrust laws, and AT&T sought discovery from agencies beyond the Department of Justice. Id, at 1330. As in this case, the government in *AT&T* took the position that the DOJ was the only plaintiff in the case, and, therefore, that AT&T would have to seek discovery from other agencies pursuant to Rule 45. The *AT&T* Court rejected this approach, reasoning, in relevant part, "it is clear that the limited theory of the nature of the 'plaintiff' advanced by the Department of Justice is unacceptable. This action, as its caption indicates, was brought not on behalf of the Department of Justice, but on behalf of the United States of America. In the vindication of broad economic policy, it simply makes no sense to hold that the Department of Justice, which essentially is a law office, alone compromises the United States." Id, at 1333.

Therefore, the Court ruled that government agencies beyond the DOJ were subject to party discovery obligations

Q42DUNIC

under Rule 34.  The *AT&T* Court excepted from its ruling certain independent regulatory agencies, such as the FCC, 461 F. Supp., at 1334-35, none of which are relevant to the current discovery dispute.  The *AT&T* Court recognized the case was "relatively unique," but like in *AT&T*, the complaint in this case involves, "massive and wide-ranging allegations" that involve evidence from departments beyond the DOJ.

The government may wish to brief the issue, however, the reasoning in *AT&T* is persuasive and is plainly applicable in this case.  Moreover, as Visa points out in its letter, in *United States v. Google*, No. 23 CV 108, Eastern District of Virginia, the government took the position that federal agencies advertisers that purchased services from Google, would be deemed "parties" for the purpose of discovery, and the District Court adopted that position.  ECF Nos. 87 and 94. *United States v. Google*, No. 23 CV 108, Eastern District of Virginia.  The government's position in this case is inconsistent with the broader approach it took in the *Google* case.  Therefore, Visa may seek discovery related to Pay.gov pursuant to Rule 34, rather than Rule 45, because the United States is a party to this litigation within the meaning of Rule 34, and the Treasury Department, just like the Department of Justice, is part of the United States Government.  So ordered.

By the way, I should just add that the government's position in this case that the Treasury is not a party to this

Q42DUNIC

case strikes me as somewhat inconsistent, though this isn't part of my ruling, with the position that the government has been taking in other litigations relating to the concept of the unitary executive, under which the executive branch of the government includes all of the departments of the government under the control of the President, and it's interesting that the Court in the *AT&T* case was prepared to exclude regulatory agencies, which is precisely similar to the issue before the Supreme Court in the case of whether to overrule Humphrey's executor.

It also leaves, as another question, which is not at issue in this particular dispute, what the standing of the Federal Reserve is with respect to all of that, but it seems clear that the Treasury Department is part of the United States Government and should be considered as a party for purposes of Rule 34.  There, plainly, are questions about the relevance of the documents sought by the Treasury, but certainly on the exchange of letters before me, there is a sufficient showing of the relevance of the documents relating to Pay.gov.

So that's my ruling.  If the parties want to continue litigation over that, they are certainly welcome.  I've said this before, but it's a good time to repeat it.  The parties in this case have shown extraordinary cooperation, which is a tribute to you all.  You have limited the issues that you've brought before me.  You've attempted to resolve issues in good

Q42DUNIC

faith, and that's permitted me to supervise the case without even relying upon a magistrate judge.  I would prefer to do it that way, because I want to make sure that I follow the case, control the case.  Among other reasons, this is a non-jury case that I will eventually have to resolve, and the reasonableness of the lawyers in dealing with the case is a good indication about how I can eventually deal with the trial of the case.

If there comes a time when I think that the number of disputes that the parties have I can't reasonably handle with the other matters on the docket, then of course I can refer matters individually to the magistrate judge, or assign the case for general pretrial to the magistrate judge, with appeals coming to me.  I don't want to do that, and the level of cooperation among the parties hasn't necessitated my doing that.  You're all to be congratulated to that so far.

There was one other additional problem in discovery that the parties noted for me in the status reports, and so I thought it would be helpful to address that, also.  It appears, just on the basis of what you've told me in the status reports, that Visa made productions of various documents to the government, and there were certain documents that Visa produced to the government that appeared to be unreliable in a couple of instances, because the documents had been sent out to certain independent sources who didn't adequately do the kind of analysis that should have been done.  So some of the summary

Q42DUNIC

documents, if you will, that were produced by Visa to the government turned out to be unreliable, but Visa was working on fixing that, and that, as a result of that, I might be asked to change the schedule.

Now, if all of that were to be thought a litigation device, if you will, to delay the deadlines or seek a delay in the deadlines, that would not be good.  When I read the correspondence back and forth, my initial reaction was it was not clear to me why Visa had any obligation to create documents for the government, to do analyses of the documents by sending various documents out to independent sources to create documents in a way that the government sought, rather than to produce the native documents to the government and say, you want to analyze them, analyze them.  We don't have an obligation to create documents for you.  But in the spirit of cooperation, you've asked for this, and we'll do this, and we'll attempt to analyze our documents and give you that analysis.

Rule 34 requires the production of the documents in the control of Visa.  It doesn't require that Visa go out and produce new bespoke analyses for the government.  So I was not impressed by the correspondence to conclude that somehow Visa was doing something wrong in an effort to derail or delay discovery.  I go through this only because it's the only glitch in the course of complex discovery that's been brought to my

Q42DUNIC

attention. So it doesn't indicate to me that somehow discovery has gone off the rails or that the parties are not continuing to cooperate in a spirit that is moving the case along. If, somehow, I'm presented with a dispute that suggests in some way the parties are not continuing to cooperate in good faith, then I will have to do something differently.

In addition to the magistrate judge, I could, of course, appoint a discovery special master, either the magistrate judge or appoint someone such as a former magistrate judge to act as a discovery special master. Again, I don't want to do that. Whether I have to do that depends upon how you all conduct the litigation, including the phase of depositions in the case. I mean, you all know how to conduct depositions, and depositions can go smoothly without a lot of objections, directions not to answer, obstructive conduct, and the like, which, in other cases, could result in a lot of applications to the Court for one thing or another. So, I'm sure you all get the point.

So, having disposed of the matters that are before me, I'm happy to listen to anything else that you all want to raise with me.

MR. CONRATH:  May I take a moment?

THE COURT:  Sure.

MR. CONRATH:  So, just to clarify, what were -- the disputes that we've been giving you periodic reports about

Q42DUNIC

which relate to data, only the data, the document production is on a separate track.  But I want to be clear, Visa has a database of data that is relevant to no dispute I think about the relevance of the allegations in our case.  We did not ask them to create -- to give to a third-party any -- or work with that data.  We would like a copy, effectively, of that database.  Not every column, if we can say it, as I picture it, a spreadsheet, is kind of -- we may not want every field, but all we're asking is their existing database so that we can do it and we can do our own analyses.

So if we have created the impression that we're asking them to do analysis or create anything, I apologize, your Honor.  That is not what's going on.  This is, I think, ordinary discovery.  They have data.  It's relevant.  We would like a copy.  In the course of the most recent discussions, we learned that they had, for their own purposes, created a copy of much of this -- that we hadn't learned about the existence of that, which might have made it easier for us, and we were a little disappointed to learn it late in the process.  But it's fine.  We're working with that.  That might be the thing that it refers to, something that we've set up outside of their own system, but that's not something they created in order to respond to it.

What we want is a copy of a substantial portion of their database.  We'll do our own analyses once we've got that.

Q42DUNIC

So I hope, I hope we haven't created an erroneous impression from our reports, and I just wanted to make sure that I said that. And I think we're certainly not saying anything about the long-term schedule. There are some interim deadlines that may need to be -- interim deadlines for data production that maybe we're back on track, maybe we're not, but we're certainly not discussing moving the overall deadlines in this.

And as -- your description of depositions and how they can sometimes go without problems, we're not -- we're just on the verge of the deposition phase of this process, but we're hopeful that it will go smoothly along the lines that your Honor referenced. Thank you, your Honor.

THE COURT: Thank you.

MR. KATERBERG: Thank you, your Honor, for the helpful guidance. I will be brief. I don't think I have any major disagreement with anything Mr. Conrath just said.

I think your Honor used the word "glitch" to characterize what happened with the data, and I think that's a good word for it. So it's a tremendously complicated process to extract the kind of data that they've asked for, so we have gone to extensive efforts to try to get that to them as efficiently as possible. You essentially have to write a custom computer program to pull the right data fields to get it to them in the format that they're requesting. So we've done that. Like any software, you go through a debugging process,

Q42DUNIC

and we've learned that, inadvertently, there were some fields that we're missing and we're working very hard to rectify that issue.  And I think the two sides are cooperating very well.

THE COURT:  I thought that the report which said that the computer experts on both side have been put together to discuss it was an excellent development, so I appreciate the cooperation of the parties.

MR. KATERBERG:  Yes, your Honor.  We found that a constructive step.  Thank you.

THE COURT:  Anything else the parties want to raise with me?

MS. MURDOCK-PARK:  Yes, your Honor.

THE COURT:  Sure.

MS. MURDOCK-PARK:  We appreciate the Court's comments with respect to Rule 34 versus Rule 45 discovery.  If we may take that back to our superiors to determine up whether additional briefing is necessary -- we don't know at this time, but we'll take into account everything your Honor is stating.

THE COURT:  It strikes me the government's position in this case may be contrary to the broader position the government takes with respect to what the proper scope of the government is.  So --

MS. MURDOCK-PARK:  And we will certainly make that point, your Honor.

THE COURT:  Good to see you all.  (Adjourned)